**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

SHARRON HAWKINS,                                                                    PLAINTIFF

v.                                                                     CIVIL ACTION NO. 3:03-CV-442WS

JO ANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY                                                                DEFENDANT

### ORDER

Before the court is the Report and Recommendation of the United States

Magistrate Judge  in the above styled and numbered cause pertaining to the denial of

the plaintiff's application for disability benefits by the Social Security Administration.

Title 42 U.S.C. § 405 authorizes United States district courts to conduct judicial review

of the final decisions of the Commissioner of Social Security concerning applications

for Social Security benefits.  This judicial review is limited.  The court's role is to

determine whether (a) the Commissioner applied proper legal standards and (b) the

decision is supported by substantial evidence.  *Leggett v. Chater*, 67 F.3d 558, 564

(5th Cir. 1995);  *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).  If proper

principles of law were applied, and if the Commissioner's decision is supported by

substantial evidence, the Commissioner's findings are conclusive and must be

affirmed*.  Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d

842 (1971).

In the instant case, the plaintiff, Sharron Hawkins, applied for disability insurance benefits and supplemental security income in March of 2000, and October of 2000, respectively, alleging a disability onset date of June 5, 1997.  The plaintiff's first application for disability benefits filed in 1999 had been denied on October 12, 1999, and the plaintiff did not appeal.  So, the plaintiff now may assert no onset date prior to October 13, 1999.

The plaintiff's March 2000 and October 2000 applications were denied by the Social Security Administration both initially and on reconsideration.  The Administrative Law Judge (hereinafter "ALJ") issued a decision on August 16, 2002, finding that plaintiff was not entitled to a period of disability, disability benefits, or supplemental security income.  Plaintiff sought review by the Appeals Council for the Social Security Administration in Washington, D.C., which declined review.

The plaintiff appealed to this court.  Thereafter, the United States Magistrate Judge held that the ALJ had failed to assess properly the plaintiff's pain and had failed to ask the vocational expert to take her pain into account in the first of two hypothetical questions presented to that expert. The Commissioner has submitted objections to these findings.  The matter now is before this court for review.

## STANDARDS OF REVIEW

### A.  Review of the Commissioner's Decision

Judicial review of the Commissioner's decision by this court may only determine whether substantial evidence supports the Commissioner's final decision, and whether

the Commissioner applied the correct legal standards.  *Morris v. Shalala*, 207 F.3d

744, 745 (5th Cir. 2001);  *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996);  *Spellman*

*v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).  Also, absent factual or legal error, the

court cannot remand the case for further proceedings.  *Sullivan v. Hudson*, 490 U.S.

877, 885, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989).  Substantial evidence means

"such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion," being "more than a scintilla, but less than a preponderance."  *Spellman*

*v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993)*; Johnson v. Bowen*, 864 F.2d 340, 343-44

(5th Cir. 1993).  Any evidentiary conflicts are for the ALJ to decide.  *Carrier v. Sullivan,*

944 F.2d 243, 247 (5th Cir. 1991).  This court, however, must scrutinize the entire

record to ascertain whether substantial evidence supports the Commissioner's

decision.  *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  If the evidence

supports the Commissioner's decision, then the decision is conclusive and must be

upheld.  *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).  Also, this court is not to

reweigh the evidence in the record, try any issues *de novo*, or substitute its judgment

for that of the Commissioner, even if there is evidence that weighs against the

Commissioner's final decision.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

#### B.  Review of the Magistrate Judge's Findings

Rule 72 of the Federal Rules of Civil Procedure and Title 28 U.S.C. § 636

govern review of the Magistrate Judge's orders.  Pursuant to Title 28 U.S.C.

§636(b)(1)(A), a district court may modify or set aside any portion of the Magistrate's

order relating to a non-dispositive motion only if it is clearly erroneous or contrary to law.  Rule 72(a) of the Federal Rules of Civil Procedure similarly states that a district court must apply the clearly erroneous standard, a deferential standard of review.

Dispositive matters where the Magistrate is required to make a Report and Recommendation to the District Judge with findings of fact and conclusions of law call for a different approach.  In these cases, the district court shall make a *de novo* determination of the Magistrate's ruling on issues which a party has filed a specific written objection.  *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir.), *cert. denied*, 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989) (a district court must engage in *de novo* review where a party has objected to a magistrate's decision); *Koetting v. Thompson*, 995 F.2d 37,  40 (5th Cir. 1993) (party filing written objections to the magistrate judge's findings was entitled to a *de novo* review by the district court).

This court follows both standards set forth in (A) and (B) above.

## SUMMARY OF MEDICAL EVIDENCE AND OTHER FACTS

The case record discloses the following about the plaintiff's medical history. The plaintiff was 29 years of age at the time of her hearing before the ALJ.  Plaintiff graduated from high school and completed some college work.  Her past relevant work experience was as a wire harness assembler and a poultry worker.  The plaintiff injured her right arm and elbow while working as a wire harness assembler.  On June 4, 1997, after she had suffered the injury to her right arm and elbow, the plaintiff

underwent MRI (or magnetic resonance imaging) scans, a radiology technique that uses magnetism, radio waves, and a computer to produce images of body structures. The MRI scans revealed tendinitis of the right shoulder and soft tissue edema around the elbow.

In September of 1997, the plaintiff consulted Dr. Larry Field, a physician, who examined the plaintiff and found that she had significant ulnar nerve injury of the right elbow and chronic rotator cuff tendinitis, as well as a symptomatic "AC joint," the joint formed where the acromion[1] connects to the collar bone or clavicle.  Dr. Field prescribed steroid injections and physical therapy.  Despite this treatment, the plaintiff continued to experience problems with her right arm, ultimately being diagnosed with reflex sympathetic distrophy or RSD, a condition which occurs from a disturbance in the sympathetic (unconscious) nervous system that controls the blood flow and sweat glands in the hand and arm.  When the nervous system becomes overactive, burning pain is felt and swelling and warmth are left in the affected arm.  If not treated, RSD can cause stiffness and loss of use[2] of the affected part of the arm.[3]

In November of 1998, the plaintiff underwent a form of shoulder surgery referred to as right shoulder arthroscopic acromioplasty and an ulnar nerve (commonly called the "funny bone") transposition at the right elbow.  Thereafter she received

---

[1]The top of the wing bone or scapula is the acromion.

[2]In the instant case the ALJ presumed that the plaintiff could not use her right hand and arm.

[3]See the American Academy of Orthopaedic Surgeons web site at www.orthoinfo. aaos.org.

multiple and frequent nerve block injections for pain, but continued to experience

shoulder and elbow pain.

The plaintiff was examined by Dr. Louis Saddler in January of 2000, who found

edema and tenderness in the plaintiff's right hand and arm, poor grip strength in the

right hand and moderate impairment of gross manipulation.  Dr. Saddler prescribed

Vioxx, Neurontin and Zoloft, and obtained for the plaintiff a consultive referral to Dr.

Gerald Randle in February of 2002.

Dr. Randle noted that the plaintiff's right arm suffered reduced sensation all

around the arm (circumferential reduced perception of all modalities of sensation) and

that her right hand was moist.  Dr. Randle further found that muscle tone in the

plaintiff's right arm was normal, and there was no evidence of atrophy.  Dr. Randle

noted that during his examination the plaintiff refused to move her right arm, a refusal

he attributed to pain.  Dr. Randle concluded that the plaintiff could lift and carry 20

pounds, with no restriction on standing, walking, and sitting, and that she was

restricted from pushing/pulling, climbing, reaching, handling, fingering and feeling with

her right upper extremity.

Three letters from the plaintiff's treating physician, Dr. Calvin Ramsey, were

submitted to the ALJ.  Dr. Ramsey is an internal medicine specialist who observed

that the plaintiff suffered from severe pain, severe anxiety and depression.  Dr.

Ramsey concluded from his observations that the plaintiff was permanently and totally

disabled.

At the hearing before the ALJ, the plaintiff testified that she suffers from

ongoing pain in her right shoulder and arm, lives with her two small children (ages 8

and 4 years), and is working on a degree in elementary education by taking junior

college classes online at the public library.  Plaintiff says she must limit her driving

because of her medications:  Vioxx, Tylenol no. 3, Hydroxyzine, Skelaxin, Neurontin

and Wellbutrin.

## THE ALJ's DECISION

The plaintiff contends that the ALJ failed adequately to evaluate her complaints

of pain in reaching his ultimate decision to deny her claim for benefits.  *See Falco v.*

*Shalala*, 27 F.3d 160, 163 (5th Cir. 1994);  *Abshire v. Bowen*, 848 F.2d 638, 642 (5th

Cir. 1988) (failure to articulate reasons for rejecting a claimant's subjective complaints

of pain deprives the decision of substantial evidentiary support and requires remand).

The Commissioner responds that the ALJ's overall analysis included an adequate

assessment of the plaintiff's claims of pain and is based on substantial evidence.

The Social Security Administration has promulgated regulations that have

reduced the determination of disability to a five-step analysis.  The ALJ followed this

five-step sequential evaluation process to determine not whether the plaintiff suffered

pain, but whether her pain limited her functional capacity so that she was unable to

perform any work available in the national economy.  This sequential analysis is as

follows:  (1) whether the claimant is engaged in substantial gainful activity;  (2)

whether the claimant has a severe impairment;  (3) whether the impairment meets or

equals a listed impairment;  (4) whether the impairment prevents the claimant from

performing past relevant work;  and (5) whether the impairment prevents the claimant from doing any other work.  *See* Regulation 20 C.F.R. §§ 404.1520 and 416.920(a).

The ALJ found that the plaintiff was not engaged in substantial gainful activity, that she suffered from a severe impairment which met or equaled a listed impairment, and that the impairment prevented her from performing her past relevant work.  Then, the ALJ turned to step five, whether the impairment prevented the plaintiff from performing any other substantial gainful activity.  If the ALJ had found this to be so, then he would have been required to conclude that the plaintiff was disabled.  *Leggett v. Chater*, 67 F.3d 558, 564 n.2 (5th Cir. 1995).

Under the first four steps of the sequential inquiry, the burden lies with the plaintiff to prove disability.  *Leggett*, 67 F.3d at 564.  The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id*.  Once the plaintiff satisfied her burden under the first four steps, the burden shifted to the Commissioner at step five to show that other gainful employment is available in the national economy that the claimant is capable of performing.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

The ALJ made his finding of non-disability at step five of the process.  In reaching this conclusion, the ALJ accepted that the plaintiff's pain gave rise to both exertional and non-exertional limitations.  Nevertheless, the ALJ determined that the plaintiff had a residual functional capacity[4] which permitted her to perform light work that required no functional use of her (dominant) right hand and arm, so long as the work did not involve any climbing, balancing, crawling or exposure to dangerous machinery.  The ALJ relied on the testimony of a vocational expert (VE),[5] posing two hypothetical scenarios for the VE to consider.  First, the ALJ directed the VE to consider a person the same age as the plaintiff with the same education and work experience who can carry 20 pounds occasionally with her left arm and ten pounds frequently, and who has no functional use of her right hand and arm, who would be unable to climb, balance and crawl, and who could not be exposed to dangerous machinery.  The VE found that the plaintiff would be able to perform work available in significant quantity in the national economy, jobs such as ticket taker, counter attendant and dressing room attendant.

---

[4]Before making specific findings at Steps Four and Five of the sequential evaluation process, the ALJ evaluates and determines a claimant's "residual functional capacity." Residual functional capacity is defined as "what you can still do despite your limitations."  20 C.F.R. § 404.1545(a).  It has three components: physical abilities, mental abilities, and other abilities affected by impairments.  *Id*.

[5]When eliciting expert vocational testimony, an ALJ typically poses a hypothetical question to a vocational expert that incorporates all disabilities that the ALJ has found. Vocational experts are called to testify because they are familiar with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).  The vocational expert expresses an opinion as to what available work a person with posed disabilities can perform.  When impairments recognized by the ALJ are reasonable under the evidence, and the ALJ's ultimate determination is consistent with the expert vocational testimony, the ensuing decision is considered to be supported by substantial evidence.  *Morris v. Bowen*, 864 F.2d 333 (5th Cir. 1988).

In the second hypothetical, the ALJ directed the VE to consider a person the same age as the plaintiff with the same background, education and work experience who, presumably because of pain, would miss more than four days in a business month at work.  The VE responded that there would be no work such a person could perform.

The ALJ rejected the plaintiff's claim of total disability due to pain, following the first hypothetical and finding there was no convincing medical evidence that the plaintiff's ability to stand, walk or sit was impaired or that she was unable to use her left hand and arm for work.  The allegation of total disability, according to the ALJ, was unsupported by credible evidence.  Thus, following the VE's findings in the first hypothetical, the ALJ concluded that the plaintiff could perform light work available in the national economy and was not disabled according to the Social Security Administration's standards.

## ANALYSIS

This court is limited to determining whether substantial evidence supports the finding of the ALJ when considering the record as a whole.  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995);  *Randall v. Sullivan,* 956 F.2d 105, 109 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Martinez*, 64 F.3d at 173;  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995);  *Villa v. Sullivan*, 895

F.2d 1019, 1021-22 (5th Cir. 1990).  Four elements are weighed when determining

"whether there is substantial evidence of disability:  (1) objective medical facts;  (2)

diagnoses and opinions of treating and examining physicians;  (3) the claimant's

subjective evidence of pain and disability;  and (4) his age, education, and work

history."  *Martinez*, 64 F.3d at 174;  *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir.

1991).  This court, however, may not "reweigh the evidence or substitute its judgment

for that of the administrative fact finder."  *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir.

1985).  If substantial evidence is found, this court may only determine whether the ALJ

applied the proper legal standards and conformed with the applicable statutes and

regulations.  *Cook*, 750 F.2d at 392-93;  *Martinez*, 64 F.3d at 173.  This court is not a

"rubber stamp" for the ALJ's decision or the Magistrate Judge's findings.  *Cook*, 750

F.2d at 393.  Instead, this court scrutinizes the record and takes into account whatever

fairly detracts from the substantiality of evidence supporting the ALJ's findings."  *Id.*

The plaintiff makes two arguments in support of his appeal.  The plaintiff in the

instant case contends that the ALJ did not properly address the plaintiff's subjective

complaints of pain, and did not give the VE a proper hypothetical to consider pain.  Of

course, the principle is well established that the ALJ must consider all the impairments

alleged by the plaintiff, including the subjective complaints of pain.  See Regulation 20

C.F.R. § 404.1523;  *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000);  and *Crowley v.

Apfel*, 197 F.3d 194, 197 (5th Cir.1999).  The ALJ decides whether an applicant,

notwithstanding severe impairment, has the physical and mental ability to perform

activities generally required by competitive, remunerative work.  See Regulation 20

C.F.R. 404.1545.  A claimant's impairments and severity thereof are determined at

step two of the five step  sequential evaluation process.  The pertinent regulation and

the applicable case law require consideration of the combined effect of all

impairments, irrespective of whether any impairment, if considered separately, would

not meet the definition of "medical severity."  See, 20 C.F.R. § 404.1523;  *Crowley*,

197 F.3d at 197.  If any impairment or combination of impairments is determined to be

"medically severe," it must be considered throughout the remainder of the disability

determination process.  *Loza*, 219 F.3d at 393.  In the instant case, the ALJ found that

the plaintiff suffered from a severe elbow injury affecting her right hand and arm.

This court is satisfied that the ALJ properly considered the plaintiff's limitations

due to her injury and her complaints of pain in reaching his final determination in this

case.  The ALJ concluded that the plaintiff had a residual functional capacity for light

work.  Based on this finding he concluded that she could maintain employment on a

continuing basis when he posed the first hypothetical situation, presuming the

plaintiff's inability to use her right hand and arm.  The ALJ took into consideration that

the plaintiff took care of her two school age children, was able to drive, even though

her driving was limited when she took her medications, and that she was taking four

ongoing courses on line at the local library in elementary education from a community

college.  In light of these functional abilities, the ALJ concluded that the plaintiff could

perform light work, lifting twenty pounds occasionally and ten pounds frequently, and

using only her left hand and arm.  The VE provided the types of work available in the

national economy.

Next, the ALJ found a lack of convincing medical support for any greater degree of limitation due to pain.  The ALJ noted that when the plaintiff presented herself to the emergency room on the day she injured her elbow, the medical records show she had "good, active range of motion" and that she was released in good condition.  The ALJ also considered Dr. Ramsey's observation on September 2, 1997, that the plaintiff's elbow injury had been disabling since June of 1997, shortly after she was injured.  As the ALJ noted, this observation by Dr. Ramsey was made over one year before the plaintiff's surgery in November of 1998.  Moreover, Dr. Ramsey's observation in March of 1999 was that the plaintiff could return to light duty work.

Referring to the plaintiff's consultations with Dr. Field, the ALJ noted that Dr. Field found the plaintiff's shoulder problems to be frequent and of mild intensity.  Dr. Field further noted that the plaintiff exhibited normal motion, strength and stability of the elbow, and had only a 6% upper extremity impairment rating.

The ALJ considered that the plaintiff sought treatment at a hospital emergency room for pain in her shoulder, that these emergency room visits had occurred shortly after her surgery, and that Dr. Field had observed no post-operative complications. Dr. Field also observed that the plaintiff could return to full-duty work within two to three months after her surgery;  that the plaintiff would benefit from "work hardening"; and that the plaintiff's x-rays showed good surgical results with a range of motion in her right shoulder which was normal.

The plaintiff argues that the ALJ failed to evaluate properly her complaints of pain.[6]  The ALJ considered the plaintiff's testimony that she suffered from pain and could not lift her right arm.  The ALJ also considered the plaintiff's testimony regarding how she dealt with her pain, that her medication relieved her pain enough to permit her to sleep, that her pain did not preclude her taking education courses at the local library, and that her medication did not affect her concentration in a manner which would interfere with her ability to do her homework assignments.  So, the ALJ determined that the objective medical evidence before him did not support the allegation that the plaintiff suffered from disabling pain that was "constant, unremitting, and wholly unresponsive to therapeutic treatment."  *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).[7]

## **CONCLUSION**

---

[6]Regulation 20 C.F.R. § 404.1529(c)(3) sets forth seven separate factors that an ALJ must consider, in addition to objective medical evidence, when assessing credibility of a claimant's subjective complaints of pain.  These factors include: (1), the individual's daily activities; (2), the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3), factors that precipitate and aggravate the symptoms; (4), the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate the pain or other symptoms; (5), treatment, other than medication, that the individual receives or has received for relief of pain or other symptoms; (6), any measures other than treatment the individual uses or has used to relieve the plain or other symptoms; and (7), any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  In this court's view, the ALJ considered all the factors pertinent to the plaintiff.

[7]Pain alone constitutes a disabling condition when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment," and when corroborated by objective medical evidence. Consequently, in cases involving painful impairments, consideration of the effects of pain and other subjective symptoms on claimants' ability to work is integral to residual functional capacity determinations.  *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).

An ALJ has the discretion to evaluate credibility and to arrive at an independent judgment regarding pain, as well as the duty ultimately to determine disability on the basis of the claimant's residual functional capacity to engage in gainful employment. Credibility determinations and conflicts in the evidence are properly resolved by the ALJ.   This court finds that there is substantial evidence to support the ALJ's conclusion that any allegations of "disabling pain" in this case were not substantiated by corroborative positive clinical findings or medical evidence.  The ALJ's determination was supported by the VE's testimony that an individual with the plaintiff's limitations could work in unskilled, light duty positions which occur in significant numbers in the national and local economies.  *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

Therefore, this court shall not adopt the Report and Recommendation of the United States Magistrate Judge that this case be remanded to the ALJ for further consideration of the plaintiff''s assertions of pain.  The decision of the ALJ, Office of Hearings and Appeals, is hereby affirmed.

**SO ORDERED** this the 30th day of March, 2006.

s/ HENRY T. WINGATE

CHIEF UNITED STATES DISTRICT JUDGE

CIVIL ACTION NO. 3:03-CV-442WS
ORDER